UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONALD R. J.,[1]

                              Plaintiff,             **DECISION AND ORDER**

v.                                                         1:20-CV-1795-JJM

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that he was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [8, 9].[2] The parties have consented to my jurisdiction [11]. Having reviewed the parties' submissions [8, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 1,448-page administrative record [6, 7] is presumed. In January 2018, plaintiff filed a DIB application, alleging a disability onset date of

---

[1]    In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]    Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

June 1, 2013.  Administrative Record [6] at 35, 166.[3]  Plaintiff complained of a right shoulder injury, torn rotator cuff, dislocated bicep tendon, chronic pain, difficulty lifting, left shoulder issues, stenosis, scoliosis, high blood pressure, "several" herniated discs, pars defect, pain when sitting/standing/walking for long periods of time, pulmonary embolisms, deep vein thrombosis ("DVT"), and blood clots in his legs. Id. at 184.  Plaintiff's claim was initially denied. Id. at 89.

The Hearing

Administrative Law Judge ("ALJ") Jonathan Baird conducted a hearing on August 7, 2019. Id. at 50-83.  Plaintiff was represented by an attorney. Id. at 53.  At the outset of the hearing, plaintiff's counsel indicated that she had been unsuccessful in procuring a medical source statement for plaintiff but noted the existence of "impression and findings by . . . some of his treating doctors". Id. at 54.

Plaintiff testified that, while working on road construction in May 2013, he slipped into a ditch and suffered a torn rotator cuff and bicep tendon. Id. at 58. Since that time, he lived off a workers' compensation settlement. Id. at 56-57. Plaintiff previously worked another physical job repairing heavy drilling equipment. Id. at 59. Before that, plaintiff worked as a debt collector, a "sitting" job that he believed contributed to a blood clot in his leg. Id. at 60-61. Plaintiff complained that his blood clot/DVT condition made his leg swollen and painful to walk on. Id. at 64.  He also complained of long-standing back pain that made it difficult to sit or sleep. Id. at 62-63.  He testified that he needed to change positions every couple of minutes. Id. at 66. He was on pain medication. Id. at 67.  He had trouble lifting and avoided using his right hand/arm. Id. at 67-68.  He took Zoloft because he felt "down all the time" due to his chronic

---

[3]    The ALJ's Decision states the application was made on January 8, 2022 ([6] at 35), while the application summary states the application was completed on January 11, 2018. Id. at 166.

pain. Id. at 72-73. Nonetheless, he lived alone and managed household tasks and grocery shopping. Id. at 68-69.

### The ALJ's Decision

On October 11, 2019, ALJ Baird issued a decision denying plaintiff's claim. Id. at 32, 35-45. He concluded that plaintiff was not disabled from June 1, 2013 through his date last insured, which was March 31, 2014. Id. at 35, 37. He found that plaintiff had the following severe impairments during the relevant timeframe: DVT/pulmonary embolism, venous insufficiency, right shoulder injury, degenerative disc disease, and spinal stenosis. Id. at 37. He considered plaintiff's impairments of obesity, left shoulder injury, and depression to be non-severe. Id. at 38. He found plaintiff had no functional mental limitations. Id. at 38-39.

ALJ Baird then determined that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by the applicable regulations,[4] except that he could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; occasionally reach overhead bilaterally; and frequently reach, handle, and finger. Id. at 40. He found that, consistent with this RFC and the vocational expert's hearing testimony, plaintiff was able to perform past relevant work as a collection clerk, and, in the alternative, he could perform other jobs that sufficiently exist in the national economy such as furniture rental clerk, order clerk, and sorter. Id. at 43-45. He concluded that a finding of "not disabled" was appropriate. Id. at 45.

---

[4] Light work is defined to "involve[] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds". 20 C.F.R. §§404.1567(b), 416.967(b). Such work can "require[] a good deal of walking or standing, or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls". Id. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10, 1983 WL 31251.

In reaching this determination, ALJ Baird reviewed plaintiff's post-incident medical records. Id. at 41-42. Those records reflected a May 2013 injury to plaintiff's right shoulder causing tears of his supraspinatus tendon, subscapularis tendon, and labrum. Id. at 41. In December 2013, plaintiff underwent arthroscopic surgery on his right shoulder to repair his rotator cuff tear, bicep/labral tear and impingement. Id. Plaintiff participated in post-operative physical therapy, which appeared to improve his overall functioning and to decrease, but not eliminate, his shoulder pain. Id. at 41; [7] at 965-77. He ultimately determined that this condition was adequately accommodated by the limitations to light exertion, reaching and handling in his RFC determination. [6] at 41.

ALJ Baird also reviewed plaintiff's treatment for DVT/PE and back pain. Id. at 41-42. ALJ Baird considered plaintiff's DVT/PE condition to be "a longstanding well-established impairment", but noted that plaintiff managed that condition during periods of heavy exertion work. Id. ALJ Baird further reported the existence of plaintiff's spinal degenerative condition, but that the documentation of such complaints and treatment began in August 2016 - more than two years after the date last insured - and that such records did not support any additional limitations prior to that date. Id. at 42. He determined that both conditions were accommodated by the light exertion and postural limitations of the RFC. Id.

Relevant Medical Evidence

In August 2015, plaintiff returned for a follow-up examination of his right shoulder. Id. at 1073-75. The examining physician noted right shoulder pain, scapular dyskinesis, and some reduced range of motion; however, he noted no swelling, tenderness, a negative arm drop, and 5/5 strength when resisting all ranges of motion. Id. at 1075.

ALJ Baird also considered the following medical opinions of record:

- May and August 2016 opinions by orthopedic specialist William Wind, M.D. Id. at 931-33, 942-44. In these opinions, Dr. Wind assessed plaintiff with a limited range of motion in his right shoulder due to pain and a "[c]omplete rotator cuff tear". Id. at 932, 942-43. He initially opined that plaintiff was 100% disabled in his right shoulder; however, he later reduced that number to 50% and a recommendation of employment at a "desk job". Id. at 931, 943. ALJ Baird considered Dr. Wind's opinions to have "little persuasiveness" as they were provided in the context of a workers' compensation claim, were provided well after the date last insured, and not consistent with Social Security Administration program requirements. Id. at 43.

- A July 2016 workers' compensation independent medical exam by Robert Michaels, M.D. [7] at 950-53. Plaintiff told Dr. Michaels that his shoulder surgery was only "minimally" helpful, and reported ongoing pain, stiffness, and weakness in his shoulder. Id. at 950. Dr. Michaels examined plaintiff and assessed him with a restricted range of motion, but no tenderness, swelling or erythema. Id. at 951. Impingement, apprehension, and O'Brien's tests could not be performed due to an insufficient range of motion. Id. However, Dr. Michaels reported a positive drop arm test and weakness in the rotator cuff. Id. He diagnosed plaintiff with "[s]tatus post right should rotator cuff repair and biceps tenodesis" and "recurrent rotator cuff tear". Id. at 952. He opined that "[t]he re-tear is not due to new injury" but was "causally related" to the 2013 injury. Id. He believed that plaintiff was at maximum medical improvement and assessed him with a "moderate" degree of disability. Id. He opined that plaintiff should not squat, lift more than 20 pounds, work at heights, or engage in "extensive" walking. Id.

ALJ Baird considered Dr. Michaels' opinion to be of "limited persuasiveness" due to the gap in time between the date of the examination and the date last insured. [6] at 43.

Nonetheless, ALJ Baird found the limitations assessed by Dr. Michaels to be "generally consistent" with his RFC determination. Id.

- A March 2018 assessment from state agency consultant J. Meyer, M.D. Id. at 88. Dr. Meyer reviewed plaintiff's medical records from the date of the 2013 shoulder injury to the surgical repair of his rotator cuff later that year. Id. at 88. While Dr. Meyer noted plaintiff's complaints of shoulder pain and the results of various tests prior to the surgery, he found there was "insufficient evidence to fully evaluate the severity of" plaintiff's allegation during the relevant time period. Id. ALJ Baird agreed with Dr. Meyer's account of the "very limited" medical evidence prior to the date last insured; however, he found that the evidence showing that plaintiff continued to treat for his right shoulder supported limiting him to light exertion. Id.

**ANALYSIS**

Plaintiff argues that the RFC determination was not supported by substantial evidence because: (1) ALJ Baird determined the medical opinions of record were of limited relevance to the period of time plaintiff was insured, and thus his determination was not tethered to a medical opinion and improperly based on lay opinion (Plaintiff's Brief [8-1] at 13-16); and (2) ALJ Baird failed to develop the record by obtaining a retrospective medical opinion that related to relevant time period. Id. at 16-19.

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     ALJ Baird's RFC determination was supported by substantial evidence.**

Plaintiff argues that ALJ Baird's RFC determination was not supported by substantial evidence because he discounted the medical opinion evidence of record and relied on his own lay opinion in formulating the RFC. Plaintiff's Brief [8-1] at 13-16. The Commissioner argues that ALJ Baird properly weighed the medical and opinion evidence; that the RFC determination accommodates the limitations opined by Dr. Michaels; and that any failure to incorporate the limitations opined by either medical expert is harmless as those limitations do not preclude plaintiff's past relevant work as a collections clerk. Commissioner's Brief [9-1] at 10-23. I agree with the Commissioner.

Initially, it is well established that the ALJ, and not any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2) and §§ 416.946(c), 416.927(d)(2); *see* Curry v. Commissioner of Social Security, 855 Fed. App'x 46,

48 (2d Cir. 2021) (Summary Order) ("[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear"). The Second Circuit has repeatedly stated that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and that an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order); see Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022). Rather, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (quoting Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017) (Summary Order)).

Moreover, "a medical source statement or formal medical opinion is not necessarily required", where "'the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity'". Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8 (2d Cir. 2017) (Summary Order) (quoting Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013)); see Darnell J. v. Commissioner of Social Security, 2021 WL 1405853, *11 (W.D.N.Y. 2021) ("while an ALJ's decision must be supported by substantial evidence, this does not mean that there must be a medical opinion expressly speaking to the physical portion of the RFC"). "Accordingly, the issue is whether the record is clear[] and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding." Williams v. Commissioner of Social Security, 366 F. Supp. 3d 411, 417 (W.D.N.Y. 2019); see also Muhammad v. Colvin, 2017 WL 4837583, *4 (W.D.N.Y. 2017).

Here, ALJ Baird reviewed the medical treatment evidence of record which, by plaintiff counsel's own admission, contained "impression and findings by . . . his treating doctors". Hearing Transcript [7] at 54.  Those impressions and findings indicated that plaintiff had substantial functionality in his surgically repaired right shoulder until at least August 2015 - well after the date last insured. *See* id. at 41. The record further indicated that plaintiff worked throughout his long-standing DVT condition. *See* id.; Reynolds v. Colvin, 570 F. App'x 45, 47 (2d Cir. 2014) (Summary Orders) ("[a] claimant work[ing] at substantial gainful activity [is] a circumstance making it difficult to infer severe impairment from the earlier records"); *see generally* 20 C.F.R. §§404.1520(a)(4)(i), 404.1571. Finally, the record was silent as to plaintiff's alleged back condition prior to the date last insured. *See* id. at 41-42.  ALJ Baird determined that these conditions were, therefore, adequately accommodated by the light exertion, reaching and handling, and postural limitations in his RFC determination. Id. at 41.

These restrictions also track, if not fully incorporate, the limitations assessed by Dr. Michaels. *See* [7] at 952 (opining that plaintiff should not squat, lift more than 20 pounds, work at heights, or engage in "extensive" walking).  Thus, this is not a case where the ALJ outright rejected or disregarded the opinion evidence of record. *See* Sarah C. v. Commissioner of Social Security, 2021 WL 1175072, *11 (N.D.N.Y. 2021) ("affording partial weight to an opinion is not the same as outright rejecting or disregarding it"). Rather, the ALJ clearly considered and incorporated the elements of the opinion evidence he determined appropriate based on the more time-relevant evidence of the record. *See* Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017) ("the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence").  For these reasons, I conclude that ALJ Baird's RFC determination is supported by

substantial evidence and is sufficiently tied to the relevant medical assessments of plaintiff's limitations. See Schillo, 31 F.4th at 78 (affirming where "the ALJ accorded the treating physicians' opinions lesser and not no weight, . . . considered their conclusions to assess Schillo's RFC, . . . looked to the other sources in the administrative record, including MRI results, x-ray results, and notes documenting Schillo's visits with other medical providers . . . [and] [u]sing these opinions and data points, . . . laid out with specificity Schillo's physical capabilities").

I further note that "[u]ltimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020).  Here, plaintiff adduces no medical evidence demonstrating any specific functional limitations greater than those incorporated into ALJ Baird's RFC determination.  "A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015) (Summary Order).  Dr. White's conclusions that plaintiff was "50% disabled" in his right shoulder and should be limited to a "desk job" ([7] at 943) are not functionally descriptive and, therefore, not useful assessments of the plaintiff's limitations. See Magnum v. Colvin, 2015 WL 629403, *11, n.13 (S.D.N.Y. 2015) ("[the] characterization of a claimant as 'disabled' by medical providers for purposes of a Worker's Compensation claim is not particularly useful in the Social Security context because the two statutory schemes have completely different definitions of disability") (collecting cases).

Finally, as ALJ Baird determined plaintiff could perform past relevant work as a collection clerk, plaintiff retained the burden to prove otherwise. Talavera, 697 F.3d at 151. "To

prevail, a claimant must show that she cannot perform her past relevant work as she actually performed it and as that work is performed generally." Maleekah H. v. Commissioner of Social Security, 2022 WL 2816288, at *4-5 (W.D.N.Y. 2022). Here, "[p]laintiff did not meet [his] burden to show that []he was unable to perform [his] past relevant work both as actually and as generally performed and, thus, remand on this basis is not warranted". Id.  Even Dr. White's opinion that plaintiff should be limited to a "desk job" ([7] at 943) does not appear to be preclusive of this type of work, which is performed at the sedentary level of exertion. [6] at 77.

C.     **The ALJ was not required to obtain a retrospective opinion.**

Plaintiff further argues that ALJ Baird, recognizing the absence of a useful functional assessment, was obliged to obtain a "retrospective" one from a medical source. Plaintiff's Brief [8-1] at 16-19.  I do not agree.

This argument appears to be an extension of plaintiff's first argument, *i.e.*, that the ALJ's decision was unsupported by substantial evidence. For the reasons discussed above, I conclude otherwise. While the regulations suggest that an ALJ "may recontact" a medical source (20 C.F.R. §404.1520b[b][2][i]), they also state that the ALJ will "consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have". §404.1520b(b)(1).  Thus, "the ALJ's duty to develop the record is not absolute, and, as such, does not arise where the ALJ already possesses sufficient evidence to make an RFC determination". Linda L. v. Commissioner of Social Security, 2021 WL 2269504, *4 (W.D.N.Y. 2021).  The presence of a useful assessment of plaintiff's limitation in the record, which plaintiff's counsel appears to have conceded at the outset of the hearing ([6] at 54), defeats the assertion that there was some "obvious gap" in the record triggering the ALJ's obligation to solicit additional evidence. See Stacy D. v. Commissioner of Social Security, 358 F. Supp. 3d

197, 206 (N.D.N.Y. 2019) ("'where there are no obvious gaps . . . and where the ALJ already possesses a complete medical history,' the ALJ is under no obligation to seek additional information").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [8] is denied.

**SO ORDERED**.

Dated: March 14, 2023

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge